## Case No. 6,083.

### The HAROLD HAARFAGER.

#### [8 Ben. 216.] ¹

District Court, E. D. New York. July, 1875.

BILL OF LADING—DISCHARGE OF CARGO—COOPERAGE—DAMAGE.

1. Cement was shipped in a steamship under an ordinary bill of lading. When it was being discharged, the heads came out of some of the barrels, and some were found with loosened staves, so that cement escaped from them on the dock, which was gathered up and replaced, but so as to be injured by an admixture of dirt. The loose casks were re-coopered on the dock; a portion of them, while waiting to be coopered, were left on the dock over night, and being insufficiently covered, the cement was injured by rain. *Held*, that it was the duty of the ship to have had the casks coopered in the hold, if that was necessary to prevent the escape of their contents while being discharged.

2. Even if the casks had become loose in the hold, by being made of green wood and shrinking excessively from the heat of the hold, which was not proved, that would not discharge the ship from her liability for a failure to put them in proper landing order before discharging them.

3. The ship was liable for the cement lost, and for the damage to what was injured by rain and by being carelessly mixed with dirt.

A steamer brought a quantity of Portland cement, shipped under an ordinary bill of lading, and unloaded it at a dock in the East river. Many barrels of cement had the heads stove in and staves loosened, and cement escaped on the dock in quantities, which was afterwards scraped up to fill the depleted barrels, without much care to keep it clean. Some barrels that were in bad condition were re-coopered in the hold, and landed safely; others were not, and were re-filled and coopered on the dock. There was so much waste that all the barrels could not be refilled. A number of barrels stood over night on the dock awaiting the coopers, and were covered with a canvass, but not sufficiently to protect them from damage by rain that occurred. The consignees complained to the stevedore and the officer in charge of the ship, during the unloading; and afterwards brought this suit for damage and loss of the cement.

¹ [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Hawkins & Cothren, for libellants.
Butler, Stillman & Hubbard, for claimants.

BENEDICT, District Judge. The demand in this case is based upon a bill of lading in ordinary form, which acknowledges the receipt of 2,000 barrels of Portland cement in good order and condition. The answer avers that the casks in which the cement was packed were improperly coopered, whereby some of the cement escaped into the ship's hold; that this was carefully taken out and well and securely coopered up in barrels; that many of the cement barrels suffered from the ordinary wear of the voyage, and these were coopered and made tight, and the whole cargo in good order and condition, was then delivered to the libellants; and that libellants sustained no damage.

The proofs show that while the casks of cement were being landed from the ship, the heads came out of many of them, and quantities of cement escaped from these and from other casks upon the dock, which was scraped up and replaced in the casks before delivery. It is also proved that cement was lost in this way—some casks when refilled being found not to contain the full quantity shipped. The value of the cement in the refilled casks was also in some cases impaired by the admixture of dirt gathered in the scraping up the cement from the dock. The weight of the evidence also is that 39 casks were detained on the dock awaiting the ship's cooper, and while there were insecurely covered, so that the cement was damaged by rain which fell during the night. The proof is insufficient to show that the casks in which the cement was shipped were different from ordinary casks, or were incapable of sustaining the ordinary wear of such a voyage without injury. It is beyond dispute, that either from the loose condition of the casks, or from the way in which they were handled, quantities of the cement escaped in the landing, whence damage arose.

The ship avers no peril of the seas; she proves no inherent defect in the casks. It was her duty to cooper the casks in the hold, if that was necessary to enable her to land them without losing the contents. Her obligation to handle them so as not to injure the contents is also clear. Her liability is therefore the same, whether the loss arose from the loose condition of the casks when placed in the slings, or from bad handling afterwards.

It was suggested on the trial, but not proved, that the casks were constructed of green wood and that heat in the hold had · shrunk the staves, so that the heads and staves were loosened. It is unnecessary to decide what would be the effect upon the ship's liability, if proof had been given of the existence in the wood of the casks of an excessive liability to shrink under the ordinary. heat of a ship's hold. It might well be that such a condition would be an inherent defect.

that would absolve the ship from liability for the contents of casks lost in the ship's hold. But even such proof would not excuse the carrier for contents lost on the dock in the landing, when that loss could be prevented by the services of a cooper in tightening the staves and heads of the casks before putting them in the slings.

In this case the obligation to cooper the casks in the hold is admitted by the answer, and this duty is alleged to have been performed by the ship. The defense set up is performance. Upon the evidence the contract was not performed, and the libellant is entitled to recover the amount of the damage arising from the loss of cement from the casks refilled, from the destruction of the contents of 39 casks wet while on the dock, and from any diminution in value arising from the admixture of dirt scraped from the dock in the process of refilling. Let a reference be had to ascertain the amount of the loss according to this opinion.